IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Marie Hogan, | No. CV09-2379-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Anasazi Foundation, | |
| Defendant. | |

Before the Court is the Motion to Dismiss Plaintiff's Complaint (doc. # 11) by Defendant Anasazi Foundation ("Anasazi").

**I.     Legal Standard**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

## II. Background

The following factual allegations of Plaintiff's First Amended Complaint are assumed to be true, but the Court has not determined that they are true. *See Cousins*, 568 F.3d at 1067.

In December 2008, Plaintiff Elizabeth Marie Hogan applied for a trail walker position in response to an employment advertisement on Anasazi's website. Anasazi's human resources director conducted a telephone interview with Hogan, during which Hogan was told that she met the requirements for the trail walker position and was invited to attend the training that was to begin on January 5, 2009. Hogan was told that trail walker trainees generally are guaranteed a position with Anasazi unless a health condition arises while on the trail. Hogan understood from reading the pre-hire packet that Anasazi would require drug screening and a criminal background check.

Hogan resigned her position as a Wal-Mart receiving associate in Connecticut to attend the training in Phoenix, Arizona. She traveled by car from Connecticut to Arizona and procured the physical, immunizations, CPR certification, and supplies that Anasazi required of its trail walker trainees. She incurred relocation expenses of at least $2,000.

On January 5, 2009, Hogan arrived at the Anasazi office in Phoenix and was greeted by the field director, Andrew Belcher, and his assistant, Matt Howard. She traveled with the training group to the field and completed the first day of training. She received no indication from the training staff of any needed improvement.

On January 6, 2009, Hogan participated in the second day of training. She was invited to a sitting with Howard, during which he imparted some of Anasazi's core teachings to Hogan. Howard invited Hogan to participate in the Blanket Ceremony, during which he asked Hogan about the ring on her finger. She responded that it was a wedding ring and she was married to a woman named Lilli. Howard told Hogan that her sexual orientation would prevent her from being hired by Anasazi because some parents would find her to be an untrustworthy and undesirable role model for their children. Further, Howard said that many of the young walkers were sent to Anasazi specifically

because they are demonstrating tendencies toward same-sex attraction, which the parents are seeking to root out.

When Hogan asked Howard if Anasazi had a policy regarding same-sex attraction, he said he did not know of any such policy, but one Anasazi policy required all of its trail walkers to "refrain from sexual intimacies outside of marriage." This policy was stated in the pre-hire training packet received by Hogan. Howard said he didn't think the policy applied to same-sex couples. Hogan told Howard that when she had previously read the policy in the pre-hire training packet, she interpreted it as implying that if one is married, one cannot commit adultery. Howard said the phrase specifically mean that until a trail walker is married, he or she may not engage in sexual intimacies.

When Hogan asked Howard if he was sure that she would not be hired, he replied that he was certain that Hogan would not be hired. Although the field training was scheduled to end the evening of January 7, 2009, Howard said that Hogan could leave the evening of January 6, 2009. Hogan, believing she was no longer welcome at Anasazi, left.

The following day, January 7, 2009, Hogan contacted Anasazi to arrange to receive her training paycheck. She also received a telephone call informing her that Mr. Merchant wanted to meet with her. On January 8, 2009, she met with Merchant, who told Hogan that the main reason Anasazi did not hire her was that Anasazi policy required trail walkers to "refrain from sexual intimacies outside of marriage," and Howard had assumed Hogan would not "refrain from sexual intimacies outside of marriage." Merchant said that Hogan could choose to meet this clause and still have eligibility at Anasazi. Hogan told Merchant she had received the impression from Howard that her sexual orientation would prevent her from being hired regardless of whether she was legally married. Merchant told her that her impression was inaccurate and Anasazi had hired trail walkers before who had been open about their homosexual orientation. Merchant apologized and communicated to Hogan that he felt the situation had been handled inappropriately. He said he would use this situation to approach the Anasazi board regarding changing its

policy to recognize same-sex marriages and committed relationships, but did not indicate when he would do it.

In its pre-employment packet, job requirements, or web site, Anasazi did not indicate that sexual orientation is a condition of employment. Until Hogan told Howard that her partner was a female, she was considered a favorable candidate for becoming a trail walker.

Hogan filed a charge of employment discrimination against Anasazi with the District Office of the Equal Employment Opportunity Commission, which subsequently issued a right to sue letter. On December 24, 2009, Hogan initiated this action. On April 26, 2010, Anasazi moved to dismiss Hogan's complaint. On May 16, 2010, Hogan filed Plaintiff's First Amended Complaint at the same time as she filed her response to Anasazi's motion to dismiss.

### III. Analysis

Plaintiff's First Amended Complaint seeks declaratory and injunctive relief and compensatory and punitive damages for alleged violation of Title VII of the Civil Rights Act of 1964. It alleges:

> 43. Defendant violated Title VII because the plaintiff was in the protected group, was qualified to do, and was doing the work in a satisfactory manner, was terminated, was treated less favorably than situated employees who were male, and defendant was motivated by illegal discrimination because of sex.
>
> 44. Defendant violated Title VII because the plaintiff was in the protected group, was qualified to do the work, was denied employment, was treated less favorably than situated applicants for employment who were male, and defendant was motivated by illegal discrimination because of sex.

Although much of Plaintiff's First Amended Complaint focuses on allegations suggesting Hogan was denied employment because of her sexual orientation, in her response to the motion to dismiss Hogan agrees with Anasazi that "sexual orientation is irrelevant for purpose of Title VII." Hogan states that she "is alleging discrimination based on gender," not sexual orientation, and contends that Anasazi's policy requiring trail walkers to

1  "refrain from sexual intimacies outside of marriage" discriminates against her as a woman
2  because it would not preclude employment of a man who is married to a woman.

3  Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to
4  discharge any individual, or otherwise discriminate against any individual with respect to
5  his compensation, terms, conditions, or privileges of employment, because of such
6  individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To
7  establish a prima facie case of disparate treatment under Title VII, a plaintiff must show:
8  "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was
9  subject to an adverse employment action; and (4) similarly situated individuals outside
10 her protected class were treated more favorably." *Davis v. Team Elec. Co.*, 520 F.3d
11 1080, 1089 (9th Cir. 2008). Although the First Amended Complaint does not explicitly
12 plead that Hogan is female, for the purpose of deciding this motion to dismiss, the Court
13 assumes that the First Amended Complaint adequately pleads facts supporting the first
14 three elements of a Title VII disparate treatment claim.

15 Regarding the fourth element, Hogan contends that because Anasazi's policy
16 requiring trail walkers to "refrain from sexual intimacies outside of marriage" applies to
17 both men and women, it permits a man to engage in sexual intimacies within his marriage
18 to a woman, but it does not permit a woman to engage in sexual intimacies with a woman.
19 This contention is nothing more than an attempt to circumvent established precedent,
20 which Hogan concedes holds that Title VII does not protect against discrimination on the
21 basis of sexual orientation. Anasazi's policy does not prohibit sexual intimacies within
22 marriage, regardless of the gender of the marital parties. It does not permit either a man
23 or a woman to engage in sexual intimacies outside of marriage with a person of either
24 gender and therefore does not treat similarly situated individuals outside her protected
25 class more favorably. If Hogan is not married, or if she is married and her marriage is not
26 recognized under Arizona law, *see* Ariz. Const. art. XXX, § 1, and she refuses to refrain
27 from sexual intimacies, she will violate Anasazi's policy—regardless of her gender.
28

Plaintiff's First Amended Complaint will therefore be dismissed for failure to state a claim upon which relief can be granted.

**IV.    Leave to Amend**

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But, "[l]eave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice . . . or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The district court's discretion to deny leave to amend a complaint is "especially broad" where the plaintiff already has had one or more opportunities to amend her complaint. *Id.* at 1161. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore*, 885 F.2d at 538. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Although Hogan already has amended her complaint once, she will be granted leave to file a second amended complaint by June 22, 2010.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint (doc. # 11) is granted.

IT IS FURTHER ORDERED that Plaintiff's First Amended Complaint (doc. # 17) is dismissed for failure to state a claim upon which relief can be granted with leave to amend by June 22, 2010. If no further amended complaint is filed by June 22, 2010, the Clerk shall then enter judgment dismissing this action with prejudice for failure to state a claim upon which relief can be granted and shall terminate this case.

DATED this 8th day of June, 2010.

_____
Neil V. Wake
United States District Judge